IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILSON B. ZIA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 7437 |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Magistrate Judge |
| Commissioner of Social | ) | Arlander Keys |
| Security, | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Wilson B. Zia ("Mr. Zia" or "Plaintiff"), moves this Court for summary judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, to reverse or remand the final decision of the Commissioner of Social Security (the "Commissioner"), who denied his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments under the Social Security Act. For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment.

## PROCEDURAL HISTORY

On December 5, 2007, Mr. Zia filed an application for a period of disability and DIB with the Social Security Administration. R. 105-109. He also filed an application for SSI on December 5, 2007. R. 110-116. In both applications, Mr.

Zia alleged disability beginning June 30, 2007, because of a back injury sustained at work in May, 2004. R. 105; 110. Mr. Zia submitted several disability reports to support his history of physical impairments. In these reports, Mr. Zia claimed that he suffered from chronic low back pain with "sciatic features," essential hypertension, lumbar disc disease with sciatica, and mental disorder due to lumbar disc disease. R. 46-49.

In the disability reports dated February 5, 2008, Mr. Zia answered questions regarding his daily living and ability to work. R. 136-142. He claimed that he could not stand or walk for more than fifteen minutes and that he could sit for only one half hour. R. 137. Mr. Zia reported that he could not prepare food for himself, carry groceries or a bag of laundry, or take out the trash. R. 151. He also reported that he required assistance getting in and out of the car, getting up from a chair or sofa, and getting out of bed. R. 152.

In addition, Mr. Zia submitted an amendment to the previously submitted reports, claiming that his condition worsened as of April 2008. R. 165. Mr. Zia claimed that he began to suffer additional knee pain and depression. *Id.* Mr. Zia also reported that he was taking several new medications to remedy his continuing pain, depression, and his difficulty of sleeping.

The Commissioner denied Mr. Zia's claims initially on May 14, 2008, and upon reconsideration on September 9, 2008. R. 50-54; 62-66. Thereafter, on September 16, 2008, he filed a written request for hearing before an Administrative Law Judge ("ALJ"). R. 67-68. ALJ Cynthia M. Bretthauer held a hearing on June 30, 2009 in Evanston, Illinois. R. 78-82.

ALJ Bretthauer denied Mr. Zia's claim for benefits on July 30, 2009. R. 18. Subsequently, Mr. Zia filed a request for review of the ALJ's decision with the Appeals Council to review the decision on August 10, 2009. R. 1-3. On October 1, 2010, the Appeals Council denied Mr. Zia's request for review, making ALJ Bretthauer's decision the final Agency decision. R. 1. On November 18, 2010, Mr. Zia filed the civil complaint in this case.

## BACKGROUND

### A. Medical Evidence

The record shows that, on May 12, 2004, Mr. Zia was injured at work while "handling and lifting materials," and then "noticed the onset of low back pain extending down into his right leg." R. 224; R. 482. More specifically, he claimed to have suffered symptoms consistent with "lumbar disc herniation and radiculitis." R. 213. Mr. Zia initially received physical therapy, medication and an epidural steroid injection to treat

3

his back injury. R. 305. On June 8, 2004, he reported to treating orthopedic surgeon, Dr. John Stamelos. Dr. Stamelos opined that physical therapy was appropriate to address Mr. Zia's complaint of lower back pain. *Id.* Dr. Stamelos issued a medical advice record stating that Mr. Zia's June 2004 MRI scan seemed to be consistent with his clinical history. *Id.* The MRI showed "posterior disc protrusion-herniations of approximately 3 to 4 mm without significant spinal stenosis at L3-4 and L4-5." *Id.* Dr. Stamelos recommended a home exercise program as well as structured therapy. *Id.* At that time, Dr. Stamelos recommended the continuation of Mr. Zia's Vioxx medication and the discontinuation of Darvocet and Flexeril. *Id.*

Throughout the period of Mr. Zia's disability claims, he attended several general office visits with Dr. Charles Brikha, an internist. From January 24, 2004 until June 19, 2009, Mr. Zia reported to Dr. Brikha's office for symptoms, both related and unrelated, to his back injury. R. 406-436. On June 6, 2008, Mr. Zia went to Dr. Brikha for a general office visit due to complaints of depression with "back ache." R. 422. Dr. Brikha diagnosed him with chronic sciatica and adjustment disorder with depressed mood. R. 425. On February 12, 2009, Mr. Zia went to Dr. Brikha for a general office visit due to complaints of fever, headache, and sore throat. R. 418. Mr. Zia was diagnosed with acute tonsillitis, hypertension, and adjustment disorder with

depressed mood.  R. 420.  On February 27, 2009 and April 14, 2009, Mr. Zia went to Dr. Brikha for a general office visit with regard to his complaints of a headache.

On December 14, 2004, Dr. Bruce Montella, Mr. Zia's primary orthopedic care physician, performed a lumbar epidural steroid injection to Mr. Zia's right L5-S1.  R. 395.  Mr. Zia requested this procedure to "help facilitate his physical therapy and recovery from pain syndrome."  *Id.*  Following the procedure, there was no sign of an adverse reaction, and the condition at the time of discharge was satisfactory.  *Id.*  Mr. Zia returned for a similar procedure on December 29, 2004.  R. 391-392.

Dr. Montella noted that, from July 2004 to December 2008, at which time Mr. Zia reported for regular check-ups, there had been little to no progression since his back injury in 2004.  R. 311-330.  Mr. Zia's symptoms had been "ongoing, daily, constantly worse with bending, lifting, twisting, increasing exertion and onset of fatigue."  R. 329.  Accordingly, Dr. Montella ordered a lumbar discography to relieve Mr. Zia's back pain in 2005.  R. 495.  In April 2005, a CT scan of the spine, ordered by Dr. Montella, revealed "a mild diffuse disc bulge is greatest on the right" at L3-4, but there was no other "evidence of disc bulge or herniation or significant spinal stenosis" at any other level.  R. 306-307.  Dr. Montella also concluded that Mr. Zia's symptoms

were "severe and debilitating," and as a result, it was unreasonable for him to work in any way.  R. 317.

On May 19, 2005, Dr. Whisler, an orthopedic surgeon, evaluated Mr. Zia.  R. 368-390.  Mr. Zia complained of pain in his back and right leg that had not been relieved by his previous epidural injection or medications.  R. 372.  Dr. Whisler reviewed Mr. Zia's medical chart that included his previous June 2004 MRI which showed "L3 and L4 degenerative disc changes with disc protrusion of approximately 3-4 mm without significant stenosis." *Id.*  Dr. Whisler opined that Mr. Zia was unable to lift more than fifteen pounds and could only sit and stand on an "intermittent" basis.  R. 368.  Further, he opined that Mr. Zia was unable to return to full duty at that time.  *Id.*

On April 10, 2008, Dr. Scott Kale, a doctor who specializes in arthritis and internal medicine, examined Mr. Zia and reviewed the medical records at the request of the Bureau of Disability Determination Services.  R. 266.  During the examination, Dr. Kale opined that the x-ray of the lumbar spine showed "mild alteration in the anatomy of his lumbar spine which were not predictive of pain or dysfunction."  *Id.*  The x-ray further revealed that there was a "mild narrowing of the L5-S1 disk space with endplate spurring."  R. 271.  Dr. Kale concluded that Mr. Zia did exhibit "chronic low back pain with sciatic features and

hypertension." R. 268. Thereafter, the Disability Benefits investigator ordered a physical residual functional capacity assessment ("RFC") to use as a guideline for Mr. Zia's functional limitations. R. 272.

On April 30, 2008, Dr. Virgilio Pilapil, a medical consultant, performed Mr. Zia's RFC. R. 273-279. Dr. Pilapil reviewed his medical evidence and opined that Mr. Zia was subject to certain exertional limitations such as sitting for a total of six hours in an eight hour workday, and not lifting more than twenty five pounds frequently or not more than fifty pounds occasionally. R. 273. Dr. Pilapil concluded that Mr. Zia's inability to heel/toe walk was due to back pain, and that, although Mr. Zia had reported a requirement of a cane to ambulate, Dr. Pilapil believed that Mr. Zia had not seen his doctor since October of 2007, and there was no mention of the use of a cane in those records. *Id.*

After reviewing Mr. Zia's RFC, the Social Security Administration filed a Disability Report, administered by Randall Boes, a vocational expert ("VE"), to determine his functional ability to work. As of April 30, 2008, Mr. Zia's physical capacity assessment indicated a capacity "for no more than medium work." R. 161. The report also indicated that, as a result of Mr. Zia's physical limitations, he was restricted to light work.

*Id.* Mr. Boes concluded that Mr. Zia was capable of jobs such as band salvager, core extruder, and steak tenderizer, which are all jobs that were entry-level and available to an individual of Mr. Zia's physical capacity. *Id.*

In August 2008, Mr. Zia reported to Dr. Randy Kettering, a clinical psychologist, for further disability determination. R. 280-282. In his report, Dr. Kettering notes that Mr. Zia complained of "sweating feet, heart races, and anxiety attacks," "suffering from depression," and "pain in the legs, stiffness, pain in the back, and shooting down the right leg." R. 280. Mr. Zia also reported being medically treated for depression during the previous eight to nine months. *Id.* Dr. Kettering noted that, while his physician referred Mr. Zia on October 18, 2007 for physical therapy to "minimize his dependence on narcotic medications," there was no evidence that he participated in physical therapy. *Id.* The psychologist diagnosed Mr. Zia with a "mental disorder due to lumbar discongenic pain and lumbar discongenic pain." R. 282.

On September 1, 2008, Dr. Howard Tin, a medical consultant, reviewed and assessed Dr. Kettering's findings. Dr. Tin concluded that Mr. Zia was "fully oriented, free of thought disorder or serious memory problems." R. 300. He opined that Mr. Zia could remember work-like procedures and carry out short

and simple instructions. *Id.* Further, Dr. Tin concluded that Mr. Zia can interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, work with others, get along with workers, and maintain socially appropriate behavior. *Id.* Lastly, the consultant asserted that Mr. Zia had the ability to respond appropriately to changes in work settings, being aware of normal hazards, travel in unfamiliar settings, and set realistic goals. *Id.*

## B. Testimony at the June 30, 2009 Hearing

### 1. Testimony of Mr. Wilson Zia

Mr. Zia, who was forty-seven years old when he filed his application for benefits and is now fifty-one years old, testified that he attended school through eleventh grade. R. 24. Mr. Zia is able to communicate in English and has been employed at various places. R. 23. Mr. Zia most recently worked at Sunstar Americas as a material handler until 2006. R. 26. While working at Sunstar Americas, Mr. Zia injured his back while handling and lifting materials. R. 24-25. He received a worker's compensation settlement in the amount of $40,000 in 2005. *Id.* Prior to this employment, Mr. Zia's income records reflected employment with K and Associates from 1997 to 1999 as a dockworker. R. 27. His past work experience also includes

9

working at the distribution center of Walmart as a loader, at Certified Systems as a loader, and at Dude, Inc. as a warehouse truck loader and unloader. R. 27-28.

When questioned about his physical capabilities, Mr. Zia testified that, although he has a valid driver's license, he does not drive. R. 25. He could walk for approximately ten minutes at a time, and at times, uses a cane. R. 36. Further, he could stand for approximately twenty or thirty minutes at one time. *Id.* He claims to have experienced pain in his back and legs and suffered from depression. R. 32-34. As a result of his depression, Mr. Zia explained that he slept at home on most days and cried often. R. 34. He also declared that he was taking Ibuprofen, Flexiril, Darvocet, Ambien, and "some blood pressure medication" prescribed by his physician, but they were making him too tired to perform his regimen designed to improve his back pain. R. 28-29. Mr. Zia also noted that he failed to continue the home exercise program recommended to him. R. 30. In addition, although his physical therapy and injection treatments worked briefly in the past, the relief was temporary and the pain returned. R. 30.

### 2. Testimony of the Vocational Expert

Mr. Frank Mendrick, a vocational expert ("VE"), also testified at Mr. Zia's hearing. R. 40. The VE reviewed Mr.

Zia's vocational history, and based on the Dictionary of
Occupational Titles, he opined that Mr. Zia is not able to
perform his past relevant work as a dockworker, which is
classified as semi-skilled, medium functioning work.  R. 42.  The
ALJ described a hypothetical person who matched Mr. Zia in age,
education, work background, and had Mr. Zia's physical and mental
attributes, who was limited to sitting for six to eight hours a
day; standing and walking at least six hours a day; could lift
and carry frequently up to twenty-five pounds, occasionally up to
fifty pounds; could only occasionally stoop, crawl, crouch, kneel
and climb ladders, ropes and scaffolds; and is limited to jobs
that are simple and routine.  *Id.*  The ALJ asked whether there
would be jobs for such an individual with these limitations.  *Id.*
The VE responded that such an individual could not perform Mr.
Zia's past relevant work.  R. 43.  However, the VE opined that a
person of the same age, with similar physical exertion
limitations to that of Mr. Zia, would be able to perform light
work, which included jobs such as general assembly and small
products assembler.  *Id.*  He also stated that, according to
federal and state reports, there are approximately 5,500 small
products assembler jobs in the six-county Chicago Metropolitan
area.  *Id.*  In addition, the VE asserted that, for simple
inspection of electric or electronic parts, there are 2,500 jobs
available.  *Id.*  He also testified that, for hand laborer, there

are 4,500 jobs available.  Id.

## C.  The ALJ's Decision

In her decision of July 30, 2009, the ALJ concluded that Mr.
Zia was not disabled under sections 216(i) and 223(d) of the
Social Security Act.  R. 18.  In making this determination, the
ALJ applied the five step sequential analysis outlined in the
Social Security regulations.  R. 12-18.

At Step One, the ALJ determined that Mr. Zia had not engaged
in any substantial gainful activity since the alleged onset date
of June 30, 2007.  R. 13.  At Step Two, the ALJ found that Mr.
Zia had the following severe impairments: back impairment and
pain disorder.  Id.  At Step Three, the ALJ determined that Mr.
Zia "did not have an impairment or combination of impairments
that meets or medically equals one of the listed impairments in
20 C.F.R. Part 404, Subpart P, Appendix 1."  Id.  The ALJ
considered section 1.04A, disorders of the spine, of the Listing
of Impairments in reaching this conclusion.  Id.  The ALJ
reasoned that, although Mr. Zia had a back impairment, "the
condition is not accompanied by sensory or reflex loss as needed
under section 1.04A."  Id.  Further, the ALJ considered section
12.07, somatoform disorders, in reaching her decision.  R. 14.
The ALJ reasoned that Mr. Zia's pain disorder "did not meet or
medically equal the criteria of listing 12.07 due to the fact

12

that he did not have the necessary reduced functioning." *Id.*

The ALJ found that Mr. Zia's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged by Mr. Zia. However, she found his statements concerning the intensity, persistence, and limiting effects of these symptoms as being not credible to the extent that they are inconsistent with his RFC. R. 14. The ALJ also gave consideration to other medical opinions in the Record. R. 14. The ALJ noted that Dr. Stamelos' June 2004 progress report indicated an MRI which showed that Mr. Zia did have L3-L5 disc herniations. R. 15. However, the ALJ made reference to the treating records from Dr. Montella, which indicated no profound or progressive neurological impairment. *Id.*

At Step Four, the ALJ determined that Mr. Zia did not have the ability to perform any past relevant work. R. 17. The ALJ agreed with the vocational report and recognized that Mr. Zia had the past relevant work as a material handler, unskilled medium to heavy work, and dock/worker/forklift driver, semi-skilled heavy to very heavy work. R. 16. In determining whether a successful adjustment to other work can be made, the ALJ considered Mr. Zia's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. R. 17.

Since the ALJ found that Mr. Zia's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations, she then asked the VE whether there were jobs available in the national economy that Mr. Zia could perform. R. 17. At Step Five, the ALJ found that, in considering Mr. Zia's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. *Id.* The VE testified that, given all of these factors, the individual would be able to perform the requirements of representative occupations such as small products assembly positions, inspection positions, and hand pack/bagger. *Id.* Accordingly, the ALJ concluded that Mr. Zia had not been under a disability as defined in the Social Security Act, from June 30, 2007 through the date of her decision. R. 18.

**D.   Mr. Zia's Appeal**

Following the ALJ's unfavorable decision, dated July 30, 2009, Mr. Zia filed an appeal with the Appeals Council, Office of Disability Adjudication and Review. R. 207. In his appeal, Mr. Zia alleged that the ALJ failed to follow the "treating physician rule." *Id.* Mr. Zia claimed that in her ruling, the ALJ erroneously rejected the opinion of the treating physician, and instead, relied predominately upon her own lay interpretation of the medical evidence. *Id.* Mr. Zia argued that the ALJ

14

erroneously determined that he retained the capacity for light work, because he could only occasionally stoop, crawl, crouch, kneel, and climb. *Id.* Mr. Zia asserted that the ALJ's assessment had no medical basis. *Id.* He claimed that a lumbar spine MRI performed on November 9, 2009 revealed "disc degeneration with diffuse disc bulge and facet arthritis at L3-L4, resulting in bilateral neural foraminal stenosis, which could affect the right and left L3 nerve roots, and disc degeneration with shallow non-stenotic disc bulging at L5-S1." R. 210.

In response to Mr. Zia's appeal, the Appeals Council denied his request for review. R. 1. The council found no reason under the applicable rules to review the ALJ's decision. R. 2.

## E.    Social Security Regulations

In determining whether an individual is eligible for benefits, the Social Security Regulations require a sequential five-step analysis. First, the ALJ must determine if the claimant is currently employed or engaging in "substantial gainful activity ("SGA"); second a determination must be made as to whether the claimant has a severe impairment; third, the ALJ must determine if the impairment meets or equals one of the impairments listed by the Commissioner in 20 C.F.R. Part 404, Subpart P, Appendix 1; fourth, the ALJ must determine the claimant's RFC; and fifth, the ALJ must decide whether the

claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). At Steps One through Four, the claimant bears the burden of proof; at Step Five, the burden shifts to the Commissioner. *Id.*

**F.    Standard of Review**

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free of legal error. 42. U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Green v. Shalala*, 22F.3d 687, 689 (7th Cir. 1994). In reviewing an ALJ's decision for substantial evidence, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

An ALJ must articulate her analysis by building an accurate and logical bridge from the evidence to her conclusions, so that the Court may afford the claimant meaningful review of the ALJ's

ultimate findings. *Steele*, 290 F.3d at 941. It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision or if the decision is not sufficiently articulated, so as to prevent meaningful review, the Court must remand. *Id.*

## DISCUSSION

### A.   The ALJ's Step Two Determination

The ALJ found that Mr. Zia had the following severe impairments: back impairment and pain disorder, and was able to perform light work. Mr. Zia challenges the ALJ's findings. He alleges that the ALJ did not follow the treating physician rule. The Defendant responds that the ALJ's decision should be affirmed, as she sufficiently explained the review of the evidence in making the finding. Defendant also argues that the ALJ gave proper weight to the treating physician's medical opinion.

At Step Two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 404.1520 (c) and 416. 920 (c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic

work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR 404.1521 and 416.921; Social Security Rulings 85-28, 96-3p, and 96-4p. If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Clifford v. Apvel*, 227 F.3d 863, 870 (7th Cir. 2000). However, "once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight." *Bauer v. Astrue*, 532 F.3d 606, 606 (7th Cir. 2008). It must be noted that, when denying controlling weight to the opinion of a treating physician, an ALJ must minimally articulate her reasons for doing so. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

Here, the ALJ determined that Mr. Zia had the RFC to perform

light work, as defined in 20 CFR 404.1567(b) and 416.967 (b), and simple and routine job tasks. R. 14. The ALJ discussed the treating physician's opinion in the ruling:

> As for the opinion evidence, Dr. Montella indicates the claimant is "disabled." However, this is a finding reserved exclusively to the Commissioner of the Social Security Administration. Dr. Montella did not delineate specific limitations for the claimant, so it is unclear how Dr. Montella finds the claimant is limited. Plus, no objective findings are noted by Dr. Montella since 2004, at which time the claimant walked normally and had a normal neurological examination. All the claimant had was the following: decreased low back mobility (Exhibit 1F/13). For these reasons, Dr. Montella's vague "disabled" assessment is given no weight.

R. 16.

In addition to analyzing the vagueness of Dr. Montella's diagnosis of "disabled," the ALJ pointed to other medical evidence in the record which challenged the treating physician's opinion. The ALJ specifically considered the finding of Mr. Zia's other physicians, including Dr. Stamelos, who indicated that Mr. Zia's June 2004 MRI showed L3-L5 disc herniations. R. 14. In her ruling, the ALJ noted that Mr. Zia had an April 2005

CT scan, which showed "mild diffuse L3-L4 disc bulging with mild flattening of the right anterior aspect of the thecal sac." R. 15. She added that, on the contrary, there was no evidence of "disc bulging, herniation, or significant spinal stenosis at any other lumbar level." *Id.* Additionally, Mr. Zia complained of a backache to Dr. Charles Brikha on June 6, 2008, but Dr. Brikha noted a normal neurological exam. *Id.* Lastly, the ALJ gave the consultative psychological examination performed in August 2008 little weight, as there was evidence that Mr. Zia did not cooperate fully at the exam. *Id.*

In her ruling, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." R. 14. The ALJ looked extensively into the records, dated May, 2004 through December, 2008, of the treating physician that indicated "no profound or progressive neurological impairment." *Id.* Moreover, the ALJ evaluated the opinions of Dr. Kale and Dr. Brikha, which both suggested that Mr. Zia's checkups were "normal." *Id.*

Based upon the ALJ's decision, she did follow the guidelines to give proper weight to the treating physician's opinion and met the "minimal" standard in articulating her reasons for doing so.

20

Therefore, the ALJ did not err in her findings and Mr. Zia's motion for summary judgment is denied based on his argument that the ALJ gave too little weight to Dr. Montella's opinion.

## B.   The ALJ's Determination of Mr. Zia's Credibility

Mr. Zia argues that the ALJ failed to properly evaluate his credibility.   In her ruling, the ALJ found Mr. Zia's testimony regarding his symptoms and limitations to be "unreliable."   R. 16.

Since "an ALJ is in the best position to determine a witness's truthfulness and forthrightness," the ALJ's credibility determination is reviewed with deference and is overturned only if it is patently wrong.   *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).   "It is only when the ALJ's determination lacks any explanation or support that [a court] will declare it to be patently wrong."   *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (quoting *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)).   Thus, the ALJ's credibility determination "must contain specific reasons for the finding on credibility to make clear to the individual and to any subsequent reviewers the weight the adjucator gave to the individual's statements and the reasons for that weight."   *Zurawski*, 245 F.3d at 887.   Merely stating that the claimant's statements "are not entirely credible," without further explaining which statements were not entirely credible,

is not sufficient. *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011).

In her ruling, the ALJ reasoned, "the only back pain treatment Mr. Zia used was medication." R. 16. The ALJ noted that in addition to taking his prescribed medication, Mr. Zia "did not follow up with Dr. Montella's recommendation for further physical therapy and epidural steroid injections." *Id.* The ALJ noted that both Dr. Montella and Dr. Brikha recommended that Mr. Zia continue with home exercises, but that he had not done so, which implied to the ALJ that his complained of symptoms were "not that significant." *Id.*

In making the determination of Mr. Zia's credibility, the ALJ also noted that Mr. Zia's testimony regarding his symptoms and limitations were considered and determined to be unreliable. R. 16. The ALJ observed that Mr. Zia testified that he had a stabbing low back pain, with radiation of pain into the right leg. *Id.* In addition, the ALJ commented that Mr. Zia stated that he was experiencing a more numb type of pain, describing that he could only walk about ten minutes and that he occasionally used a cane. *Id.* However, the ALJ noted that the physicians did not comment on seeing Mr. Zia use a cane, nor is there any mention of one being recommended or prescribed. *Id.*

With regard to the pain disorder, the ALJ acknowledged that
Mr. Zia testified to "just staying home, doing nothing, and
feeling sad." R. 16. However, he denied suicidal ideation and
reported crying only once a week. *Id.* The ALJ also noted that
Mr. Zia only has a "mild limitation in daily activities and
socialization," and that the Ambien he was taking to sleep at
night was working. *Id.* The ALJ also commented that, although
Mr. Zia has a "moderate limitation in maintaining adequate
concentration, persistence, or pace," she accounted for this with
a limitation to unskilled work activities in her decision. *Id.*
Further, the ALJ assessed that Mr. Zia was "more appropriately
limited to light work activities, as he does take medications,
even though he fails to otherwise heed his doctor's advice." *Id.*
Thus, the ALJ reasoned, Dr. Tin logically concluded that Mr. Zia
is limited to unskilled work and therefore, he only has "the
limitations described" in her decision, and "not more than
these." *Id.*

Although the ALJ considered the subjective complaints and
alleged limitations of Mr. Zia set forth in his testimony,
coupled with the medical evidence in the record, the ALJ found
that the objective medical evidence supported the finding that
Mr. Zia could efficiently perform light work. The ALJ
investigated factors such as "the nature and intensity of the
pain, precipitation and agravating factors, dosage and

effectiveness of any pain medications, functional restrictions, and the claimant's daily activities" as required. *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Further, the ALJ did more than "minimally" discuss her reasons for her consideration of Mr. Zia's credibility by specifically stating the contradictions she found between Mr. Zia's testimony and what the medical evidence revealed in the record. The ALJ did not err in her evaluation of Mr. Zia's credibility, and Plaintiff's motion for summary judgment is denied based on his argument that the ALJ failed to properly evaluate his credibility.

## C.   The ALJ's Reliance Upon VE Testimony

Next, Mr. Zia argues that the ALJ relied upon flawed VE testimony that did not include all limitations supported by medical evidence in the record. During Mr. Zia's hearing, the ALJ posed the following hypothetical to the VE:

> ...an individual who was 49 years old, has the work experience and education of this claimant and has the following exertional limitations: could sit for six to eight hours out of the day; stand and walk at least six hours out of the day; assuming someone who could lift and carry frequently up to 25 pounds, occasionally up to 50 pounds; further assuming someone who can only occasionally stoop, crawl, crouch, kneel and climb ladders, ropes and scaffolds;

and someone who is limited to jobs that are simple and routine, could such a person perform the claimant's past work?

R. 43.

After posing this hypothetical to the VE, the VE testified that a person with these limitations could not perform Mr. Zia's past work. The VE also testified that medium work would "mostly be excluded because it requires frequent postural activities." R. 43. Accordingly, the VE asserted that there were over thirteen thousand light jobs available in the national economy that this hypothetical person could efficiently perform, including small products assembler, simple inspection of electric or electronic parts, and bagger. *Id.* In her ruling, based on this testimony, the ALJ found that Mr. Zia could perform, the full range of light work and had the capability of making a successful adjustment to other work that exists in significant numbers in the national economy. R. 18.

Mr. Zia alleges that the ALJ's hypothetical to the VE failed to incorporate the mental limitation of his pain disorder. At Step Two, the ALJ found that Mr. Zia had a pain disorder that she considered under Medical listing 12.07, which are physical symptoms attributed to a mental cause. As a result, Mr. Zia argues that the hypothetical should have included mental

limitations that resulted in "mild limitations in activities of daily living and social functioning and moderate limitations in maintaining concentration, persistence, and pace."   R. 16. Defendant responds that the ALJ did ask a proper hypothetical of the VE.

"The ALJ is only required to incorporate into the hypothetical question those impairments and limitations that [s]he accepts as credible."  *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).  In the instant case, the ALJ included the limitations that were supported consistently throughout the medical evidence.  Although Mr. Zia's testimony sets forth specific mental limitations, in her opinion, the ALJ referenced the reports in the medical evidence that noted that Mr. Zia had been diagnosed with a "mental disorder due to lumbar discongenic pain."  R. 15.  As the ALJ noted in her opinion, these reports contradicted the limitations alleged by Mr. Zia.  R. 14-16.  The ALJ also discussed Dr. Tin's conclusion that Mr. Zia had the ability to interact appropriately with the general public and respond appropriately to changes in the work setting.  R. 16. The ALJ found that Mr. Zia only had a "mild limitation" in daily activities and socialization and that he "never received formal mental health treatment."  *Id.*  The ALJ did not dismiss Mr. Zia's testimony completely, but in the hypothetical, she only considered his reported limitations that she found credible.  For

these reasons and those discussed in depth above in Section B, the ALJ did not accept the mental limitations alleged by Mr. Zia as credible and, as a result, did not include them in the hypothetical that she posed to the VE. Therefore, the ALJ properly relied on the VE's testimony, and Plaintiff's motion for summary judgment is denied on the basis of his argument that the ALJ relied on flawed VE testimony.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is DENIED and the Commissioner's decision is AFFIRMED.

Dated: July 29, 2011      E N T E R:

ARLANDER KEYS
United States Magistrate Judge